**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| DOROTEO PONCE CHAVEZ, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,* | Case No.: |
| Plaintiff, | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| v. | Jury Trial Demanded |
| SEVILLE RESTAURANT AND BAR INC. d/b/a SEVILLA RESTAURANT & BAR, JOSE LLOVES, and BIENVENIDO ALVAREZ, |  |
| Defendants. |  |

---

Plaintiff, DOROTEO PONCE CHAVEZ ("Plaintiff"), on behalf of himself and others similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants, SEVILLE RESTAURANT & BAR INC. d/b/a SEVILLA RESTAURANT & BAR, ("Corporate Defendant"), JOSE LLOVES, and BIENVENIDO ALVAREZ ("Individual Defendants", and together with Corporate Defendants, "Defendants"), and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. Seq.* ("FLSA"), that he is entitled to recover from Defendants: (1) unpaid overtime compensation due to fixed salary, (2) unpaid wages, including overtime, due to a failure to compensate Plaintiff's last week of employment, (3) liquidated damages, and (4) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he is entitled to recover from Defendants: (1) unpaid overtime compensation due to fixed salary, (2) unpaid wages, including overtime, due to a failure to compensate Plaintiff's last week of employment, (3) unpaid spread of hours premiums, (4) statutory penalties for failing to provide wage and hour notices upon hiring and as legally required thereafter, (5) statutory penalties for failing to provide proper wage statements for each payment period, (6) liquidated damages, and (7) attorneys' fees and costs.

3.      Plaintiff further alleges, on behalf of himself and others similarly situated, that Defendants willfully filed fraudulent information returns with the Internal Revenue Service ("IRS") on their behalf, in violation of 26 U.S.C. § 7434.

4.      Plaintiff further alleges, on behalf of himself and other similarly situated, that Defendants breached contracts Defendants made with them by failing to pay employer payroll taxes for them, as required by the Federal Insurance Contribution Act ("FICA").

5.      Plaintiff further individually alleges that, pursuant to the New York State Human Rights Law, New York Executive Law § 296 ("NYSHRL"), Plaintiff was deprived of his statutory rights due to Defendants' discrimination based on Plaintiff's age. Plaintiff seeks to recover from

Defendants: (1) economic damages, (2) compensatory damages, (3) punitive damages, (4) damages for egregious emotional distress, and (5) attorneys' fees and costs.

6.      Plaintiff further individually alleges that, pursuant to the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), Plaintiff was deprived of his statutory rights due to Defendants' discrimination based on Plaintiff's age. (Plaintiff seeks to recovers (1) economic damages, (2) compensatory damages, (3) punitive damages, (4) damages for egregious emotional distress, and (5) attorneys' fees and costs.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

8.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

9.      Plaintiff DOROTEO PONCE CHAVEZ is a resident of Kings County, New York.

10.     At all relevant times to this action, Defendants have owned and operated a restaurant named "Sevilla Restaurant & Bar" located at 62 Charles Street, New York, NY 10014.

11.     Corporate Defendant, SEVILLE RESTAURANT AND BAR INC. d/b/a SEVILLA RESTAURANT & BAR, is a domestic business corporation organized under the laws of the State of New York with a principal place of business at 62 Charles Street, New York, NY 10014 and an address for service of process located at 66 Court St., Brooklyn, NY 11201.

12.     Individual Defendant JOSE LLOVES is the owner and executive officer of Corporate Defendant. JOSE LLOVES exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs and Class members. JOSE LLOVES had and

exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee work schedules, and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs and Class members. At all relevant times, employees could complain to JOSE LLOVES regarding any of the terms of their employment, and JOSE LLOVES would have the authority to effect any changes to the quality and terms of their employment. JOSE LLOVES ensured that employees effectively served customers and exercised functional control over the business and financial operations of Corporate Defendant. JOSE LLOVES had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members and could reprimand employees.

13.    Individual Defendant BIENVENIDO ALVAREZ is the owner and executive officer of Corporate Defendant. BIENVENIDO ALVAREZ exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs and Class members. BIENVENIDO ALVAREZ had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee work schedules, and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs and Class members. At all relevant times, employees could complain to BIENVENIDO ALVAREZ regarding any of the terms of their employment, and BIENVENIDO ALVAREZ would have the authority to effect any changes to the quality and terms of their employment. BIENVENIDO ALVAREZ ensured that employees effectively served customers and exercised functional control over the business and financial operations of Corporate Defendant. BIENVENIDO ALVAREZ had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members and could reprimand employees.

14.    At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

15.    Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

16.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members were directly essential to the businesses operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

17.    Plaintiff brings claims for relief as a collective action pursuant to FLSA Section l6(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, (including but not limited to hosts, waiters, servers, bartenders, barbacks, food runners, bussers, delivery persons, cooks, dishwashers, food preparers, and porters) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

18.    At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them: (i) proper overtime premiums at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek, due to fixed salary, and (ii) wages, including overtime, due to failure to compensate employees' last week of employment.  The claims of Plaintiff stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

19.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective

Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

20.      Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of all non-exempt employees, (including but not limited to hosts, waiters, servers, bartenders, barbacks, food runners, bussers, delivery persons, cooks, dishwashers, food preparers, and porters) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

21.      All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the title of the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under FRCP 23.

22.      The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

23.      Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of

the Class in separate actions. All the Class members were subject to Defendants' corporate practices of: (i) failing to pay overtime premiums at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek due to fixed salary, (iii) failing to pay all wages owed, including overtime wages, due to failure to pay employees' wages for the last week of their employments, (iv) failing to pay spread of hours premium, (v) failing to provide Class members with proper wage statements with every payment of wages; and (vi) failing to properly provide proper wage notices to Class members, at date of hiring and dates of all wage changes, pursuant to NYLL.

24.     Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

25.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

26.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small

in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

27.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

28.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

        a)  Whether Defendants employed Plaintiff and the Class members within the meaning of NYLL;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class members;

c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class members for their work;

d) Whether Defendant properly notified Plaintiff and the Class members of their hourly rates and overtime rates;

e) Whether Defendants properly compensated Plaintiff and Class members for all hours worked;

f) Whether Defendants paid Plaintiff and Class members the overtime premium for all hours worked in excess of forty (40) each workweek;

g) Whether there was an agreement between Defendants and Class members that all hours worked, including overtime, would be covered by their fixed salary;

h) Whether Defendants improperly paid Plaintiff and Class Members on a fixed salary basis, when New York Labor Law requires that all non-exempt employees be paid on an hourly basis;

i) Whether Defendants paid Plaintiff and Class members spread of hours premium for shifts worked in excess of ten (10) hours;

j) Whether Defendants provided proper wage notice, at date of hiring and dates of all wage changes thereafter, to all non-exempt employees per requirements of the NYLL; and

k) Whether Defendants provided proper wage statements for each pay period to Plaintiff and Class members, and whether those wage statements properly stated

Plaintiff's and Class members' overtime compensation and spread of hours in accordance with NYLL.

**STATEMENT OF FACTS**

*Wage and Hour Claims*

29.     On or around October 2021, Plaintiff was hired by Defendants to work as a cook for Defendants' Sevilla Restaurant & Bar, located at 62 Charles St, New York, NY 10014. Plaintiff was employed by Defendants until in or around October 2024, when he was terminated by Defendants.

30.     Throughout his employment, Plaintiff was regularly scheduled to work from 12:00 p.m. to 9:00 p.m. Wednesday through Sunday, for a total of forty-five (45) hours per week. In addition to his scheduled hours, Plaintiff was always required to stay one (1) to two (2) hours beyond his scheduled end time, every workday, working approximately seven and a half (7.5) hours beyond his schedule every week. In total, Plaintiff worked for fifty-two and a half (52.5) hours every week. FLSA Collective Plaintiffs and Class Members were similarly scheduled to work more than forty (40) hours each week and similarly worked hours beyond their schedules.

31.     Throughout his employment, Plaintiff was paid a fixed salary of $ 750 weekly ($ 300 in check, and $ 450 in cash), regardless of how many hours he worked in excess of forty (40) hours in each workweek. Similarly, FLSA Collective Plaintiffs and Class Members were similarly paid on a fixed salary basis without any overtime premium for all hours worked over forty (40) each week.

32.     Throughout his employment, there was never any agreement that Plaintiff's fixed salary was intended to cover the overtime hours worked in excess of forty (40) each week.

Similarly, FLSA Collective Plaintiffs and Class Members never had any agreement with Defendants that their fixed salaries would cover their overtime hours.

33.    Throughout his employment, as mentioned above, Plaintiff was scheduled to work from 12:00 p.m. to 9:00 p.m. and stayed behind for an additional one (1) to two (2) hours after the end of every shift. Despite working shifts that that exceed ten (10) hours, Plaintiff was not paid any spread of hours premiums. Similarly, Class members who were required to work hours in excess of ten (10) were not paid any spread of hours premiums.

34.    Defendants failed to pay Plaintiff his wages earned in the last week of his employment. Similarly, FLSA Collective Plaintiffs and Class members were not paid their wages earned during the last week of their employment periods.

35.    Plaintiff and Class members did not receive wage statements that were in compliance with NYLL. Being paid a fixed salary, Plaintiff and Class members' wage statements failed to include their regular hourly rate of pay, the overtime rate of pay, the number of regular hours worked, and the number of overtime hours worked in violation of the NYLL.

36.    Defendants failed to provide Plaintiff and the Class members with wage notices at hiring and at dates of all wage changes thereafter. Plaintiff did not receive wage notices either upon being hired or upon wage changes since the date of hiring, in violation of the NYLL.

37.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010

S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs*., 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

38.     Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class members. Defendants' conduct actually harmed Plaintiff and Class members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

39.     Had the wage statements Defendants provided to Plaintiff and Class members listed the total number of hours Plaintiff and Class members worked and their corresponding pay rates, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours worked overtime or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee worked overtime. Either possibility would have allowed Plaintiff and Class members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

40.     The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiffs and Class members. This delayed payment caused Plaintiffs and Class members to struggle to pay bills and other debts.

41.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

42.     The direct effect of failing to state the number of hours an employee worked and the corresponding pay rate is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); T.F. v. N.F., 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

43.     The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paysubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

44.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

45.    Here, it is clear that Defendants' failure to provide Plaintiff and Class members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours and pay rates been reported for a given pay period, Defendant's automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class members. That, in turn, would have increased Plaintiff's and Class members' entitlement to social security benefits. Because the omission prevented this outcome, it

constitutes an injury sufficient to provide Plaintiff with Article III standing.

46.     Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

47.     The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

48.     Whether or not any Class members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

49.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Id.*

50.    Here, the problem is not merely challenging but insurmountable. Plaintiff and Class members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class members. The problem, rather, is that Plaintiff and Class members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

51.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs, and Class members the proper overtime rate for hours worked in excess of forty (40) in each workweek due to being paid a fixed salary.

52.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs, and Class members their wages for the last week of their employment periods.

53.    Defendants' failure to pay spread of hour premiums to Plaintiff and Class members were clearly intentional. Defendants knew Plaintiff and Class members were working shifts lasting up to ten (10) or more hours because Defendants were the ones to require such amounts of work.

54.    Due to these unlawful acts of Defendants, Plaintiff suffered liquidated damages in an amount not presently ascertainable. In addition, Plaintiff is entitled to reasonable attorney's fees, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

*Fraudulent Filing Claims*

55.    For the first three (3) months, Plaintiff was paid fully in cash. Thereafter, Defendants compensated Plaintiff $ 300 by check and $ 450 in cash each week. Similarly, Class members were paid in mixture of cash and check throughout their employment. As a result Defendants failed to provide Plaintiff and Class Members with accurate IRS Forms W-2 for all the tax years of their employment and failed to properly record, account for, and report to the IRS all monies paid to Plaintiff and Class Members. In failing to account for these monies in their IRS filings, Defendants filed fraudulent information in violation of 26 U.S.C. § 7434. Under 26 U.S.C. § 7434(b), Defendants are liable for at least five thousand dollars to Plaintiff and Class Members for each fraudulent filing, which would have to be at least once a year.

56.    In violating the Internal Revenue Code by failing to provide proper W-2 forms, Defendants also breached their contract with Plaintiff and Class Members to pay the employer's share of Social Security and Medicare taxes for each employee.

57.     Defendants also unjustly enriched themselves at the expense of Plaintiff and Class Members by retaining monies that should have been remitted to the IRS on behalf of Plaintiff and Class Members.

58.     As a result, Plaintiff and Class Members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

59.     The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff and Class Members 7.65% of all their earnings from Defendants beginning six years prior to the filing of this Complaint.

60.     Defendants are liable to Plaintiff and Class Members for failing to pay FICA taxes for the wages earned by Plaintiff and Class Members.

*Age Discrimination under the NYSHRL and the NYCHRL*

61.     At 65 years old, Plaintiff was the oldest employee at Defendants' Restaurant, and as a direct result of his age, was subjected to relentless abuse and harassment by his manager, Miguel Lloves, the son of Individual Defendant JOSE LLOVES.

62.     As Plaintiff's direct supervisor, Miguel Lloves engaged in vicious and degrading harassment on the basis of Plaintiff's age, including physical intimidation and violent verbal abuse. Miguel would repeatedly grab Plaintiff by the shirt collar and demand that Plaintiff kill himself. On multiple occasions, Lloves would scream at Plaintiff: "You're old, slow, and no good, why don't you just shoot yourself?", a blatant attempt to demean and terrorize Plaintiff because of his age.

63. Individual Defendants JOSE LLOVES and BIENVENIDO ALVAREZ witnessed this abuse yet deliberately ignored it, allowing the harassment to continue unchecked. Despite Plaintiff's repeated pleas for Individual Defendant JOSE LLOVES to intervene, JOSE LLOVES dismissed his concerns, enabling his son's behavior to continue. Their willful inaction created a hostile work environment, which Plaintiff experienced on a daily basis.

64. The constant torment and humiliation perpetrated by Defendants took a toll on Plaintiff's mental and physical health. Plaintiff experienced stress and depression, which caused a stroke just three (3) weeks after Plaintiff's termination, leaving half of his face permanently paralyzed. Defendants' discriminatory actions and indifference to Plaintiff's pleas for intervention directly contributed to this life-altering injury.

65. At all relevant times, Defendants knowingly and willfully operated their business with a policy of subjecting Plaintiff to discrimination.  Plaintiff was terminated solely due to his age, not his performance. Plaintiff is 65 years of age.

66. During the relevant time, Defendants employed at least 15 employees.

67. As a result of Defendants' discriminatory conduct, Plaintiff suffered from emotional distress, stress, depression and physical injury under the NYSHRL and NYCHRL.

68. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

### (Brought on Behalf of Plaintiff and FLSA Collective Plaintiffs)

69.     Plaintiff realleges and reavers all the foregoing allegations as if fully set forth herein.

70.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

71.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

72.     At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

73.     At all relevant times, Defendants willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay overtime compensation for hours worked in excess of forty (40) each week, due to fixed salary.

74.     At all relevant times, Defendants willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay wages, including overtime, earned in the last week of their employment periods.

75.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records

by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

76.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

77.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (*i.e.*, double) damages pursuant to the FLSA.

78.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime compensation, due to fixed salary, plus an equal amount as liquidated damages.

79.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

### (Brought on behalf of Plaintiff and the Class)

80.     Plaintiff realleges and reavers all the foregoing allegations as if fully set forth herein.

81.     At all relevant times, Plaintiff and Class members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

82.     At all relevant times, Defendants willfully violated Plaintiff and Class members' rights by failing to pay overtime compensation for hours worked in excess of forty (40) each week, due to fixed salary.

83.     At all relevant times, Defendants willfully violated Plaintiff and Class members' rights by failing to pay wages, including overtime, earned in the last week of their employment periods.

84.     At all relevant times, Defendants willfully violated Plaintiff and Class members' rights by failing to pay spread of hours premiums for shift exceeding ten (10) hours.

85.     Defendants failed to properly notify employees of their overtime pay rate, in direct violation of NYLL.

86.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required by NYLL. Defendants are required to provide accurate and proper information on wage statements issued to employees in accordance with the NYLL. Defendants failed to satisfy the requirements under the NYLL because they did not state the correct hourly rate, correct overtime rate, and all hours worked.

87.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class members with proper wage notices, at date of hiring and at dates of all wage changes thereafter, as required under NYLL.

88.     Due to Defendants' NYLL violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid overtime compensation, due to fixed salary; unpaid wages, due to failure to compensate wages earned in the last week of employment; unpaid spread of hour premiums, reasonable attorneys' fees; liquidated damages; statutory penalties; and costs and disbursements of the action, pursuant to NYLL.

## COUNT III

## CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS UNDER 26 U.S.C. § 7434(a)

### (Brought on behalf of Plaintiff and the Class)

89.     Plaintiff realleges and incororates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

90.     Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

91.     By failing to provide Plaintiff and Class Members with accurate IRS Forms W-2 for all of the tax years during which they were employed by Defendants and failing to properly record, account for, and report to the IRS all monies paid to Plaintiff and the Class as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

92.     Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code.

93.     Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiff for reasonable attorneys' fees.

## COUNT IV

## BREACH OF CONTRACT

### (Brought on Behalf of Plaintiff and the Class)

94.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein and further alleges as follows:

95.    "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he  duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co*., 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500-501, 746 N.Y.S.2d 131, 135-136, 2002 N.Y. LEXIS 1579, *10-11 (2002).

96.    When Plaintiff and Class Members accepted offers of employment form Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiff and Class Members in accordance with all applicable laws. This involved, *inter alia*, a duty by abide by the Internal Revenue Code and pay all required FICA taxes.

97.    Defendants breached this duty when they decided to pay Plaintiff and Class Members in cash and not file proper W-2.  As a result, Plaintiff and Class Members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf but did not.

**COUNT V**

**UNJUST ENRICHMENT**

**(Brought on behalf of Plaintiff and the Class)**

98.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein and further alleges as follows:

99.     To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516, 973 NE2d 743, 950 NYS2d 333 (2012) (internal quotations omitted).

100.    Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiff and Class Members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

101.    Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class Members.

## COUNT VI

### VIOLATIONS UNDER THE
### NEW YORK STATE HUMAN RIGHTS LAW
### (N.Y. Exec. Law § 292, et seq.)

### (Brought Only on Plaintiff's Behalf)

102.    Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

103.    The New York State Executive Law § 296(1)(a) provides that:

"1. It shall be an unlawful discriminatory practice:

(a) For an employer or licensing agency, because of an individual's [...] sex, disability, predisposing genetic characteristics, familial status, [...] to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

104.    Defendants violated the New York State Human Rights Law when they discriminated against Plaintiff on the basis of Plaintiff's age. Defendants subjected Plaintiff to this discriminatory conduct through verbally harassment and physical intimidation. As a result of Defendants' discrimination, Plaintiff suffered from immense depression and stress, resulting in a stroke that paralyzed half of his face.

105.    This discriminatory conduct was in willful disregard of the provisions of the NYSHRL.

106.    As a direct and proximate result of Defendants' willful disregard of the NYSHRL, Plaintiff suffered damages in the form of lost future earnings, emotional distress, and physical injury. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, damages for egregious emotional distress, and attorneys' fees and costs.

## COUNT VII

### VIOLATIONS UNDER THE
### NEW YORK CITY HUMAN RIGHTS LAW
### (N.Y.C. Admin. Code § 8-101, *et seq.*)

### (Brought Only on Plaintiff's Behalf)

107.    Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

108.    The New York City Administrative Code §8-107(1)(a) provides that:

"1. It shall be an unlawful discriminatory practice:

(a) For an employer or an employee or agent thereof, because of the actual or perceived […]disability, […] of any person:

    (1) To represent that any employment or position is not available when in fact it is available;

    (2) To refuse to hire or employ or to bar or to discharge from employment such person; or

(3) To discriminate against such person in compensation or in terms, conditions or privileges of employment."

109.    Defendants violated the New York City Human Rights Law when they discriminated against Plaintiff on the basis of Plaintiff's age. Defendants subjected Plaintiff to this discriminatory conduct through verbally harassment and physical intimidation. As a result of Defendants' discrimination, Plaintiff suffered from immense depression and stress, resulting in a stroke that paralyzed half of his face.

110.    This discriminatory conduct was in willful disregard of the provisions of the NYCHRL.

111.    As a direct and proximate result of Defendants' willful disregard of the NYCHRL, Plaintiff suffered damages in the form of lost future earnings, emotional distress, and physical injury. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, damages for egregious emotional distress, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL, the NYSHRL, and the NYCHRL;

b.    A declaratory judgment that the practices complained of herein are unlawful under 26 U.S.C. § 7434 and that Defendants breached their contract with, and/or unjustly enriched themselves at the expense of, Plaintiff and Class Members;

c.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by

law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

d.   An award of unpaid overtime compensation due to fixed salary;

e.   An award of unpaid wages, including overtime, due to failure to compensate wages earned in the last week of employment;

f.   An award of unpaid spread of hours premiums for shifts worked in excess of ten (10) hours;

g.   An award of statutory penalties as a result of Defendants' failure to comply with NYLL wage notice and wage statement requirements;

h.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages and compensation for all hours worked, pursuant to 29 U.S.C. § 216;

i.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages and compensation for all hours of work, pursuant to NYLL;

j.   An award of compensatory damages, punitive damages, and damages for egregious emotional distress and physical injury, due under the NYSHRL and the NYCHRL;

a.   An award of pre-judgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

b.   Designation of Plaintiff as a Representative of the FLSA Collective Plaintiffs;

c.   Designation of this action as a Class Action pursuant to FRCP 23;

d.   Designation of Plaintiff as a Representative of the Class; and

e.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: May 8, 2025                                     Respectfully submitted,
       New York, New York

                                        By:   /s/ *CK Lee*_____
                                             C.K. Lee, Esq.

                                           **LEE LITIGATION GROUP, PLLC**
                                           C.K. Lee (CL 4086)
                                           Anne Seelig (AS 3976)
                                           148 West 24th Street, 8th
                                           FloorNew York, NY 10011
                                           Tel.: 212-465-1180
                                           Fax: 212-465-1181
                                           *Attorneys for Plaintiff,*
                                           *FLSA Collective Plaintiffs,*
                                           *and the Class*